UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SW ACQUISITION CO., INC.,

        Plaintiff

v.                                       Case No. 1:13-cv-785-HJW

AKZO NOBEL PAINTS LLC.

        Defendant

### ORDER

Pending is the defendant's "Motion to Compel Arbitration and Dismiss Proceedings" (doc. no. 8). Plaintiff opposes the motion, and the defendant has replied. Having fully considered the record, including the pleadings, briefs, and exhibits, the Court will <u>grant</u> the motion to compel arbitration and <u>dismiss</u> the complaint without prejudice, for the following reasons:

### I. Background

This case arises from a business deal between Miller Bros. Wallpaper Company ("Miller Bros.") and Akzo Nobel Paints LLC ("Akzo Nobel"). These companies entered into a written agreement for Miller Bros. to be an authorized dealer of Akzo Nobel products in southern Ohio and northern Kentucky. In conjunction with that agreement, Miller Bros. purchased from Akzo Nobel certain assets related to four stores in the Cincinnati, Dayton, and Covington areas, for a total value of $784,791.33 (doc. no. 8-4 at 38, Valuation). The parties executed a number of documents at the closing on September 25, 2009, including an Asset Purchase Agreement, a promissory note, and an Authorized Dealer Agreement. The latter document contains a broadly worded arbitration clause that expressly

provides: "any controversy or claim arising out of or relating to this Agreement or breach of this Agreement shall finally be settled by binding arbitration" (doc. no. 8-5, ¶ 21).

Several years later, Miller Bros. filed for bankruptcy on October 25, 2012 (S.D.Ohio Case No. 1:12-BK-15725). On January 31, 2013, SW Acquisitions Co., Inc. ("plaintiff") purchased all the assets of Miller Bros. Plaintiff acknowledges that it is the successor to Miller Bros. (doc. no. 11 at 2). Similarly, PPG Architectural Finishes, Inc. is the successor-by-merger to PPG Architectural Coatings, LLC (f.k.a. Akzo Nobel Paints LLC).

On September 30, 2013, plaintiff filed a civil complaint in the Hamilton County Court of Common Pleas in Cincinnati, Ohio (doc. no. 3). In that complaint, plaintiff sues Akzo Nobel for: 1) fraud (¶¶ 4-19), breach of contract (¶¶ 20-23), and punitive damages (¶¶ 24-26).

Specifically, in the first cause of action ("fraud"), plaintiff complains that Akzo Nobel withheld certain financial information and/or provided false information, and that Miller Bros. was thereby "fraudulently induced" to enter into the deal to purchase the assets of Akzo Nobel (¶¶ 15-17). Plaintiff complains that "Akzo Nobel's financials showed a store gross profit for the four stores purchased of 39-43% but once Miller Bros. was requested by Akzo Nobel to sell product at the same selling prices as Akzo Nobel previously sold, the gross profit dropped to 13-20%" (¶ 19).

In its second cause of action ("breach of contract"), plaintiff alleges that Miller Bros. and Akzo Nobel had expressly agreed that Miller Bros. would have

"the exclusive right to sell Akzo Nobel products within a specified geographical area as contained in the asset purchase agreement" (¶ 21).[1] Plaintiff complains that although Akzo Nobel "guaranteed" Miller Bros. a profit percentage of 28% on all goods sold, Akzo Nobel failed to deliver on the profit percentage guarantee (doc. no. ¶ 23).

In its third "cause of action," plaintiff seeks punitive damages because Akzo Nobel allegedly "knowingly and intentionally" sold product directly to customers in the protected dealership area of Miller Bros. (¶ 25). Plaintiff contends that this "resulted in the bankruptcy of Miller Bros." (¶ 26).

Defendant removed the case to federal court on October 30, 2013, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) (doc. no. 1 at ¶¶ 4-7). Defendant asserts that the plaintiff expressly agreed to resolve all disputes through final and binding arbitration. Defendant has promptly sought to enforce the arbitration clause and has moved to compel arbitration, which plaintiff opposes. This matter is fully briefed and ripe for consideration.

## II. Relevant Law

The Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") provides that a party to an arbitration agreement, who is aggrieved by another party's refusal to submit an arbitrable dispute to arbitration, may petition any federal district court which would otherwise have jurisdiction over the underlying matter in order to compel arbitration. 9 U.S.C. § 4. Section 2 of the FAA provides:

---

[1] Although plaintiff refers to the "asset purchase agreement," it was the Authorized Dealer Agreement that gave Miller Bros. the dealership rights in the Ohio/Kentucky region. Thus, the breach of contract claim is based on the Authorized Dealer Agreement, which contains the express agreement to arbitrate.

> **[A] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract.**

9 U.S.C. § 2. The primary purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ., 489 U.S. 468, 479 (1989). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." Deck v. Miami Jacobs Business College Co., 2013 WL 394875, *2 (S.D.Ohio 2013) (J. Black). Courts examine "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." Hurley v. Deutsche Bank Trust Co. Americas, 610 F.3d 334, 338 (6th Cir. 2010); Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002).

When considering whether to compel arbitration under the FAA, a court will consider: (1) whether the parties agreed to arbitrate; and (2) the scope of the arbitration agreement. Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000), cert. denied, 531 U.S. 1148 (2001); see also, Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003) ("Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."). No federal statutory claims are asserted here.

**III. Discussion**

**A. The Arbitration Clause and its Scope**

The Authorized Dealer Agreement, by its express terms, broadly provides that "[a]ny controversy or claim arising out of or relating to this Agreement or breach of this Agreement shall finally be settled by binding arbitration before a single arbitrator… who will be jointly appointed by the Parties" (doc. no. 8-5, ¶ 21). Plaintiff concedes that the breach of contract claim for violation of the Authorized Dealer Agreement is subject to arbitration. The punitive damages claim is also subject to arbitration because it "arises from" or "relates to" the Authorized Dealer Agreement, i.e. plaintiff alleges the defendant sold Akzo Nobel products directly to customers in Miller Bros.' protected dealership area.

With respect to the fraud claim, plaintiff urges that this claim is based on the Asset Purchase Agreement. Plaintiff contends that such agreement is separate and not subject to arbitration because it contains no arbitration provision separate from the clause in the Authorized Dealer Agreement (doc. no. 11 at 3). Plaintiff concedes that the breach of contract/punitive damage claims for violation of the Authorized Dealer Agreement are subject to arbitration and that "those claims are interwoven with the [alleged] fraud related to the Asset Purchase Agreement" (doc. no. 11 at 5-6).

Defendant points out that the Asset Purchase Agreement and Authorized Dealer Agreement are two integral parts of the same business deal that was consummated on the same day. Defendant points out that even Miller Bros.'s own board resolution on September 25, 2009 expressly refers to both documents and

authorizes officers of the corporation "to effect the consummation of the transactions contemplated thereby, and to carry out fully the intent and to accomplish the purposes thereof" (doc. no. 12 at 2, fn. 1). The documents were executed together on the same date. Defendant correctly asserts that "the Asset Purchase Agreement and the Authorized Dealer Agreement were two interconnected and necessary pieces of the same deal" (doc. no. 12 at 3). As for the fraud claim, plaintiff's own complaint reflects that such claim complains of the level of profitability of the Akzo Nobel product sold at the four stores, an issue that certainly "relates to" the parties' agreement to sell Akzo Nobel products at those stores as a regional dealer.

Whether an arbitration agreement requires arbitration of a particular dispute is a matter of contract interpretation. <u>Brinkerhoff v. v. Zachry Const. Corp.</u>, 2005 WL 1661693, *5 (S.D.Ohio) (citing <u>Atkinson v. Sinclair Refining Co.</u>, 370 U.S. 238, 242 (1962)). All of the plaintiff's claims in this action are within the scope of the arbitration clause because they "relate to" the Authorized Dealer Agreement. "If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms." <u>Simon v. Pfizer, Inc</u>., 398 F.3d 765, 773 n. 12 (6th Cir. 2005). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp</u>., 460 U.S. 1, 24-25 (1983); <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 26 (1991) (having made the bargain to arbitrate, the party should be held to it"). In sum, a valid agreement to arbitrate exists between the

**parties and the specific disputes raised in the complaint fall within the substantive scope of that agreement to arbitrate. Plaintiff's claims are all subject to binding arbitration.**

### B. Whether to Stay or Dismiss

**Where claims are referred to arbitration, the FAA provides for a stay of the court proceedings "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In cases, such as the present one, where** *all* **the claims are subject to final and binding arbitration, courts may properly dismiss the complaint. See Knall Beverage, Inc. v. Teamsters Local Union No. 293 Pens. Plan, 744 F.3d 419, 421 (6th Cir. 2014) (holding that district court "properly dismissed the case without prejudice" after ordering arbitration); Arnold v. Arnold Corp., 920 F.2d 1269, 1275 (6th Cir. 1990) (holding it was not "error for the district court to dismiss the complaint" after ordering arbitration); Ozormoor v. v. T-Mobile USA, Inc., 354 Fed.Appx. 972, 974-75 (6th Cir. 2009) (affirming the district court's order compelling arbitration and dismissing the complaint).**

**"The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) (quoting Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992)). "Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." Gilchrist v. Inpatient Med. Services, Inc., 2010 WL 3326742, *5 (N.D.Ohio) (quoting Nestle Waters N. Am., Inc. v. Bollman, 2006 WL 3690804, at *6 (W.D.Mich. 2006), affirmed, 505 F.3d 498 (6th Cir.**

2007)); <u>Hensel v. Cargill, Inc.</u>, 198 F.3d 245, 1999 WL 993775, at *4 (6th Cir. 1999) ("litigation in which all claims are referred to arbitration may be dismissed"). Given that all of the plaintiffs' claims are subject to binding arbitration, the Court will dismiss this case without prejudice.[2]

**IV. Oral Argument Not Warranted**

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the relevant issues. The Court finds that the pleadings and exhibits are clear on their face, and that oral argument is not warranted. <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992); <u>Schentur v. U.S.</u>, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the defendant's "Motion to Compel Arbitration" (doc. no. 7) is <u>GRANTED</u>; the parties shall arbitrate the issues presented in this case; and this case is <u>DISMISSED</u> without prejudice.

IT IS SO ORDERED.

             s/Herman J. Weber
             Herman J. Weber, Senior Judge
             United States District Court

---

[2] In the last sentence of its response, plaintiff suggests that it be permitted to amend its claims for fraud and punitive damages. See <u>La Sch. Employees. Ret. Sys. v. Ernst & Young, LLP</u>, 622 F.3d 471, 486 (6th Cir. 2010) (observing that such a request "almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is ... not a motion to amend"); <u>Begala v. PNC Bank, Ohio, Nat'l Ass'n</u>, 214 F.3d 776, 784 (6th Cir. 2000), cert. denied, 531 U.S. 1145 (2001) (same).